Merrimack, }
May 1, 1906. }

## STATE v. COHEN.

Under the statute regulating the traffic in old metals, dealers in junk are required to be licensed, as well as the keepers of shops for its purchase and sale.

The legislature have constitutional authority, in the exercise of police power, to enact laws regulating the business of dealing in junk.

The statutory provision that the mayor and aldermen of a city, or the selectmen of a town, may license persons, deemed by them to be suitable, as dealers in junk, and may determine and designate the place where the business may be carried on, is not in conflict with the constitution.

APPEAL, from the police court of Concord. The defendant was charged in a complaint with being a dealer in, and the keeper of a shop for the purchase and sale of, old junk, etc., in Concord, September 29, 1905, without a license, and was adjudged guilty by the police court. The following facts were agreed to by the parties: Chapter 124, Public Statutes, as amended by chapter 76, Laws of 1905, was in force in Concord, and the defendant had no license thereunder. He had a place of business in Concord, and advertised as a wholesale dealer in scrap iron, old machinery, pipes, rubber, and metals. He bought old metals, rags, paper, rubber, and bottles of all kinds, in any quantity, of persons licensed by the city as junk dealers. He purchased of a tin peddler, doing business in Concord and elsewhere without a license, a large quantity of old rags. He bought old iron, rubber, and metal in large quantities outside Concord, and old iron and old paper in large quantities of manufacturers and individuals in Concord. He sold some of the old iron in Concord, and some of the articles purchased to parties in other states. There were in and around his place of business large quantities of old metals, rags, paper, rubber, and bottles, which were constantly changing by reason of purchases and sales. He employed several men in assorting and arranging the property. Upon these facts the superior court found that the defendant was guilty as charged, and he excepted. Transferred from the October term, 1905, of the superior court by *Pike*, J.

*Edmund S. Cook*, city solicitor of Concord, for the state.

*Martin & Howe*, for the defendant.

CHASE, J. Section 1 of chapter 124 of the Public Statutes, as amended by chapter 76 of the Laws of 1905, reads as follows:

" The mayor and aldermen of a city, or the selectmen of a town, may license persons, deemed by them to be suitable, to be dealers in, and keepers of shops for the purchase and sale or barter of, old junk, old metals, old or second-hand bottles, second-hand articles, cotton or woolen mill waste, unfinished cloth, and cotton or woolen mill yarns in an unfinished state, not of family manufacture, within their respective cities or towns, and may determine and designate the place where the business is to be carried on under a license." By section 4, " any person who shall be a dealer in the articles aforesaid, or keep a shop therefor, without a license, . . . shall be fined," etc. The defendant says these provisions apply only to such dealers in old junk, etc., as keep shops for the transaction of their business, and that it could not properly be found from the facts reported that he was the " keeper of a shop." " Dealer " is a broader term than " shopkeeper." A " dealer " is a trader, or one whose business is to buy and sell; while a " shopkeeper " is one who keeps a shop for the sale of goods, a trader who sells goods in a shop or by retail, in distinction from a merchant, or one who sells by wholesale. Cent. Dict.; *State* v. *Canney,* 19 N. H. 135, 137. Persons may be dealers in old junk who are not keepers of shops. They may transact their business and store their goods on open lots, or in buildings that are not shops. They may deal in a large way as merchants do, and so may not be shopkeepers in a strict sense. " According to the common and approved usage of the language " (P. S., *c.* 2, *s.* 2), " dealers " and " shopkeepers " are not synonymous terms; and there is no evidence that they were used as such in the statute, or that the phrase " keepers of shops " was designed to restrict the ordinary meaning of " dealers." It would be absurd to use a general term and define or limit its meaning by special terms, when the special terms alone fully express the idea. The presumption is that both terms were used intentionally and intelligently. If a consideration of the language of section 1 by itself raised a doubt in regard to this matter, the doubt would be removed by reading section 4, in which offenders are distinctly divided into two classes: persons who, without license, are dealers " in the articles aforesaid," and those who " keep a shop therefor." In the original statute (Laws 1865, *c.* 4102), of which chapter 124 of the Public Statutes is a revision, the order of the terms was reversed, being " any person . . . who shall keep a shop or be a dealer." The change in the revision was regarded as merely verbal. Comm'rs' Rep. P. S., *c.* 123, *s.* 4. The defendant calls attention to the fact that in section 1 of the original statute there was no comma after " dealers in," or before " old junk," and suggests that the section should now be so read, since the report shows that there was no intention

to change the meaning by the insertion of the commas. The only office of the commas is that of aiding the reader in readily receiving the idea expressed by the language; they make no change in the construction or effect of the language.

If the statute was intended principally to protect the public against the evils resulting from the crime of larceny, by providing facilities for tracing the stolen property and restoring it to its owner and for the detection and punishment of the thief (*Commonwealth* v. *Hood*, 183 Mass. 196), it would not follow, as the defendant argues, that it would naturally be limited in its application to shopkeepers or petty dealers. Thieves sometimes steal on a large scale and need facilities for "wholesale" dealing to dispose of their plunder. They need a "fence" between themselves and the officers of the law, quite as much as petty thieves do. Furthermore, there is nothing inherent in the nature of a shop which renders it more liable than a store or other building, or an open lot, to be resorted to by thieves for the disposition of their plunder, or more or less useful in tracing stolen property and those who stole it. But the statute evidently was designed also to protect the public against the spread of contagious diseases and the starting and spread of fires—evils which the traffic in old junk, second-hand articles, etc., is specially liable to produce. The larger the accumulation of the articles, the greater are these dangers. Aside from these considerations, the constitutional principle of equality required that all dealers in old junk, etc.,—whether on a large or a small scale,—whether dealing directly with persons originally offering the articles for sale or with intermediate licensed dealers,— should be treated alike in all respects. *State* v. *Pennoyer*, 65 N. H. 113. It must be presumed that the legislature intended to comply with this requirement.

For these reasons, the defendant's interpretation of the statute cannot be adopted. The evidence clearly shows that the intent was to require dealers in old junk to have licenses, as well as the keepers of shops for its purchase and sale. It might reasonably be found from the facts reported that the defendant was a dealer (*City Council* v. *Goldsmith*, 12 Rich. 470), and consequently that he was guilty of a misdemeanor in carrying on the business without a license.

The defendant takes the further position that the statute is void because its provisions conflict with those of the state and United States constitutions. It is a matter of common knowledge that the business of dealing in old junk, second-hand articles, etc., furnishes peculiar facilities for the disposition and loss of identity of stolen goods and articles infected with contagious diseases. The business is quite liable to become a "fence" for the

protection of offenders from discovery and punishment, and so to promote thieving and its evil consequences.. It also brings together a mass of worn-out and discarded materials of a highly combustible nature. The business endangers. the public morals, safety, and welfare, and consequently is subject to regulation by an exercise of the police power of the state. That there may be statutory regulation of such a business without violating the United States constitution incontrovertibly appears from a very recent decision of the supreme court and the cases cited therein, especially *Gundling* v. *Chicago*, 177 U. S. 183; *Lieberman* v. *Van De Carr*, 199 U. S. 552. It appears with equal certainty, from a recent decision in this state, that the legislature have authority in the exercise of police power to enact laws regulating the business, without violating the state constitution. *State* v. *Griffin*, 69 N. H. 1. See, also, *Morey* v. *Brown*, 42 N. H. 373, 375; *State* v. *White*, 64 N. H. 48, 50; *State* v. *Campbell*, 64 N. H. 402; *State* v. *Marshall*, 64 N. H. 549; *State* v. *Forcier*, 65 N. H. 42; *State* v. *Pennoyer*, 65 N. H. 113; *State* v. *Ball*, 70 N. H. 40; *Horan* v. *Byrnes*, 72 N. H. 93.

The defendant's objection to the statute is not so much on account of an absence of power in the legislature to enact any statute on the subject as it is on account of the provisions of this particular statute. He says that it confers upon the mayor and aldermen of cities and the selectmen of towns authority arbitrarily to determine who shall engage in the business and where the business shall be carried on. If this were the true interpretation, it might be that the statute would be unconstitutional. But the defendant is in error here, also. As the statute formerly read, it authorized the mayor and aldermen and selectmen to license " suitable persons," and required that the license should designate the place where the business was to be carried on. P. S., c. 124, ss. 1, 2. The theory on which the statute was framed was, that the protection which it was thought the public required would be obtained by allowing " suitable persons " only to engage in the business, and having it definitely known where the business was to be transacted. To carry the theory into effect, it was necessary to clothe some one with authority to determine who were " suitable persons "—persons possessing the requisite sobriety, integrity, and respect for the welfare of the community to be safely entrusted with the control of a business having such possibilities of danger to the safety and welfare of the public. The legislature delegated the performance of this duty to the mayor and aldermen and selectmen. These officers were not to license persons generally, or such persons as they saw fit, but only " suitable persons." There is nothing in the statute having the least tendency to show an intention that there was to be any discrimination among "suitable

persons," or that any persons were to be adjudged unsuitable excepting those who, in the conduct of the business, would probably defeat, or attempt to defeat, the purpose of the legislature in requiring a license. All suitable persons who applied were to have licenses. The provision was not intended as a grant of arbitrary power, but only as the imposition of a duty upon those officers, to be performed by an impartial exercise of a reasonable discretion. There can be no doubt of the legislature's power to delegate the duty to these officers, and by doing so they violated no provision of the constitution. In 1905, the words "persons deemed by them to be suitable" were substituted for "suitable persons," and the phrase "and may determine and designate the place where the business is to be carried on under a license" was added at the end of the first section. The defendant says that this change conclusively indicates a purpose to give the mayor and aldermen and selectmen authority to decide the question of suitableness, in respect to both persons and places, according to their personal or political interests or prejudices, without any obligation to impartially exercise discretion in the matter. He not only places stress upon the words "deemed by them," but perverts the ordinary meaning of "deemed." "Deem" does not signify an arbitrary exercise of will, but a deliberate exercise of the judgment. "To deem" is to think, judge, hold as an opinion, decide or believe on consideration, adjudge. Cent. Dict. The apparent object of this particular change was to express more clearly the idea that the officers named were charged with the duty of adjudging as to the suitableness of applicants for licenses; to emphasize the idea that they were impartially to exercise a sound discretion upon the matter, as judicial officers do in deciding questions submitted to them. It is apparent that, by such an exercise of their discretion, the officers would adjudge unsuitable only such persons or places as, from some peculiarity of character or location, would probably prevent the carrying out of the purposes of the statute under the police power for the protection of property and persons. If the intention was to make their decision final,—a point that it is unnecessary to decide in this case,—that fact would not render the statute unconstitutional. *Newton* v. *Joyce*, 166 Mass. 83.

Another purpose of the amendment was to make it clear that the mayor and aldermen and selectmen were to determine the place where the business was to be carried on—a provision that is particularly necessary for the protection of the public against the dangers of the spread of contagious diseases and of conflagrations by the accumulation of old junk, etc., in large quantities. Localizing the business also renders it less useful to thieves for the disposition of their plunder, as it increases the risk of their detection

by affording officers of the law definite information of the places where stolen goods are liable to be found. If authorities were needed to support the proposition that the legislature had authority, in the exercise of the police power, to thus localize the business, *State* v. *Griffin*, 69 N. H. 1, and the cases cited in it are ample.

The defendant further says that the provisions of section 3 of the statute, requiring licensees to keep a record of their dealings with minors and their dealings in certain articles, to be open at all times to the inspection of the police officers and selectmen of the town, render the statute void, because they conflict with the provision of the constitution against the making of unreasonable searches and seizures (Bill of Rights, *art.* 19) and the provision protecting accused persons from being compelled to furnish evidence against themselves. *Ib., art.* 15. It seems improbable that the section is justly subject to this criticism; but it is unnecessary to examine the proposition fully at this time, for even if section 3 is unconstitutional for any reason, it is so disconnected, both in form and substance, from the other provisions of the statute that its invalidity would not affect their validity. The other provisions are capable of administration without it; and there is good reason for believing that the legislature would have passed the other sections if they had understood that they had no authority to pass section 3. *East Kingston* v. *Towle*, 48 N. H. 57; *Copp* v. *Henniker*, 55 N. H. 179, 203; *State* v. *Jackson*, 69 N. H. 511.

As the legislature possessed the power to regulate the business of dealers in old junk, etc., and as it does not appear that they have transcended the constitutional limits of the power in any particular in the enactment of the statute under consideration, their decision as to the necessity, reasonableness, and expediency of the provisions of the statute is not subject to revision by the court. "Whether it is a wise statute under existing circumstances, whether the evil sought to be corrected should be suppressed in the manner proposed, and whether public policy sanctions or requires such legislation, are matters upon which the court could not hold the statute unconstitutional." *State* v. *Ramseyer, ante, pp.* 31, 40. See, also, *Perry* v. *Keene*, 56 N. H. 514, 530; *State* v. *Campbell*, 64 N. H. 402, 403; *State* v. *Ball*, 70 N. H. 40; *State* v. *Jackson*, 71 N. H. 552, 554.

*Exception overruled.*

All concurred.