## STATE OF CONNECTICUT *vs.* SAMUEL KIEVMAN.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 8th, 1932—decided April 11th, 1933.

*Joseph H. Thalberg,* with whom, on the brief, was *David S. Korn,* for the appellant (the accused).

*Edwin S. Pickett,* Prosecuting Attorney, for the appellee (the State).

*Ernest L. Averill,* Deputy Attorney-General, with whom was *H. Roger Jones,* Assistant Attorney-Gen-

eral, and, on the brief, *Warren B. Burrows,* Attorney-General, as *amici curiæ.*

HINMAN, J. By demurrer, which was overruled, and on the trial the defendant asserted that the statute upon which he was prosecuted violated his rights under the Federal and State constitutions, and his appeal presents the same contentions. The statutory provisions to which the information in this case directly relates are contained in Chapter 171, Cum. Sup. 1931. Section 453a defines motor vehicle junk business or motor vehicle junk yard as including "any business and any place of storage or deposit . . . which displays, or in or upon which there are displayed, to view from a public highway, two or more unregistered motor vehicles which, in the opinion of the commissioner of motor vehicles or his representative are unfit for reconditioning for use on the public highways, or used parts of motor vehicles or old iron, metal, glass, paper, cordage or other waste or discarded or second-hand material which has been a part, or intended to be a part, of any motor vehicle, the sum of which parts or material shall, in the opinion of said commissioner or his representative, be equal in bulk to two or more motor vehicles." Section 455a provides that no such yard or business shall be established or maintained unless a certificate of approval has been procured from the authorized local officials and a license obtained from the commissioner of motor vehicles. Section 456a requires application for such certificate of approval and hearing thereon, on prescribed notice by mail to the applicant and the motor vehicle commissioner and by publication, and provides that the certificate shall not issue unless it be found that "no unreasonable depreciation of surroundings or adjacent property would ensue from the establishing, maintain-

ing or operating of such motor vehicle junk yard or business and that the interests of the municipality require the establishing, operating or maintaining of such yard or business at the location designated. Said local officials, commission or board, in considering such application, shall take into account the nature and development of surrounding property; the proximity of churches, schools, hospitals, public buildings or other places of public gathering; the sufficiency in number of other such yards or businesses in the vicinity; the health, safety and general welfare of the public and the suitability of the applicant to establish, maintain or operate such yard or business and to receive a license therefor. Each applicant for such certificate of approval shall pay a fee of twenty-five dollars, together with the costs of the publication of such notice and the reasonable expenses of such hearing, to the treasurer of such municipality." Quotations from § 458a, concerning issuance of license by the commissioner of motor vehicles, and § 460a, concerning appeal, appear in a footnote. Section 461a provides a penalty for establishing, operating or maintaining such junk yard or business without procuring a certificate of approval and holding a license therefor, and in addition, that application may be brought to enjoin operation or maintenance of such a yard or business and abate the same as a public nuisance.

"Sec. 458a. Upon receiving such certificate of approval each applicant for a motor vehicle junk yard or motor vehicle junk business license shall present such certificate to the commissioner of motor vehicles, . . . and shall pay a license fee to said commissioner for each motor vehicle junk yard or business of twenty-five dollars if the land used or to be used for such yard or business shall be five acres or less, and fifty dollars if such land shall be in excess of five acres. Upon receipt of such certificate of approval, the payment of the required license fee and observance of regulations required, such license shall be issued by the commissioner of motor vehicles for the period ending the thirtieth day of

The chapter (171) in which these provisions are contained also includes (§ 454a) authority to municipalities to enact ordinances or by-laws creating restricted districts within which such yards or businesses shall not be operated or maintained, and (§ 457a) requires the commissioner of motor vehicles to examine the location of any yard adjacent to a trunk line highway and authorizes him to make reasonable regulations or impose essential conditions upon the establishment, operation or maintenance of such yard. As the defendant's yard is not located in a restricted district or adjoining such a highway, these provisions are not involved in the present case and are so separable that their constitutional validity does not affect that of the provisions now under attack, and it need not be and is not considered. *Beach* v. *Bradstreet,* 85 Conn. 344, 352, 82 Atl. 1030; *Underwood Typewriter Co.* v. *Chamberlain,* 92 Conn. 199, 205, 102 Atl. 600.

The main question presented is whether the statutory provisions upon which the prosecution is based are within the bounds of legitimate exercise by the State of the police power or, on the contrary, as the

September next following. Any license may be renewed from year to year upon payment of the same fee as required for the original license. . . ."

"Sec. 460a. Any person, firm or corporation aggrieved by the action of any local officials, zoning commission or board, taken pursuant to the provisions of this chapter, may, within thirty days from the date of the action complained of and upon giving bond in the sum of one hundred and fifty dollars, appeal to the superior court for the county within which such town, city or borough is situated, and any person, firm or corporation aggrieved by any action of said commissioner of motor vehicles or his authorized representative, taken pursuant to said provisions, may, within said time of thirty days and upon giving such bond, appeal to the superior court for the county of Hartford, in the same manner as is provided for appeals in civil actions. Upon any such appeal, said court shall make such order in relation to the action appealed from as it may deem equitable."

defendant asserts, are objectionable on constitutional grounds as depriving him, and others similarly situated, of due process of law, equal protection of the law, and compensation for property taken for public purposes, impairing vested rights, and delegating arbitrary powers to administrative officials. The primary inquiry is as to the extent of the State's powers. All property is held subject to the right of the State to reasonably regulate its use. While, particularly in crowded urban centers, residents must submit to some annoyances and inconveniences arising from business, industrial and other activities carried on therein, it is within the police power to regulate occupations or businesses which, owing to their nature, the manner in which they are conducted, or their location, if exercised or conducted without restriction, are or may be materially injurious to the public health, morals, comfort, prosperity or convenience, or otherwise detrimental to the general welfare. "Where the free exercise of one's rights of property is detrimental to the public interest, the State has the right to regulate reasonably such exercise of control under the police power. And that, of course, means, without compensation." *Windsor* v. *Whitney,* 95 Conn. 357, 368, 369, 111 Atl. 354; *State* v. *Hillman,* 110 Conn. 92, 105, 147 Atl. 294; *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 47 Sup. Ct. 114; *Trigg* v. *Dixon,* 96 Ark 199, 202, 131 S. W. 695; *State ex rel. Carter* v. *Harper,* 182 Wis. 148, 155, 196 N. W. 451; 3 McQuillin, Municipal Corporations (2d Ed.) §§ 962, 1043; 12 C. J. 922.

Regulation, reasonably applied, which will promote community development finds support in the police power. *State* v. *Hillman, supra,* p. 108. This power is vested in the legislature in its broadest terms. "The controlling object is giving to the public that protection from danger which the State is bound to give, and

ordinarily the legislature must be the judge of the degree of danger and of the required protection. It may restrict the business by requiring large license fees, or by other protective regulations; and it may restrict the conduct of the business to a limited number of persons, or to persons possessing certain qualifications, to be determined by public officers to whom the administration of the law is given—or, in certain cases, to such persons as these public officers may select—thus treating the persons intrusted with the business as *quasi* public officers, and authorizing their selection on grounds of special fitness. . . . The illustrations of such regulations of a business dangerous to the public are familiar, and the cases maintaining the power of the legislature to establish them are too numerous to cite." *State* v. *Conlon,* 65 Conn. 478, 484, 33 Atl. 519. "The legislature has the power to require a license for the transaction of any business, for the purpose of regulating the conduct of it, as the public interest may demand." *State* v. *Darazzo,* 97 Conn. 728, 732, 118 Atl. 81. "A large discretion is necessarily vested in the legislature to determine not only what the interests of public convenience and welfare require, but what measures are necessary to secure such interests. *Cotter* v. *Stoeckel,* 97 Conn. 239, 244, 116 Atl. 248; *Young* v. *Lemieux,* 79 Conn. 434, 440, 65 Atl. 436. . . . It is our duty to sustain an Act unless its invalidity is in our judgment beyond a reasonable doubt." *State* v. *Bassett,* 100 Conn. 430, 432, 433, 123 Atl. 842.

We do not understand the defendant to deny that, in general, the police power is sufficient to support regulations for the purposes above mentioned. It appears from the memorandum of decision that in the trial court the objection made to the statute was "that it is based solely upon æsthetic considerations and is

designed to prevent the establishment of these yards, because they constitute an eyesore and are in their nature unsightly." The situation presented does not require us to decide whether æsthetic considerations alone would be sufficient to warrant regulation or restriction. At most we need go no further than *Windsor* v. *Whitney, supra* (p. 368), in conceding that they "may be regarded in connection with recognized police power considerations." If the latter are sufficiently present, the fact that considerations of an æsthetic nature also enter into the reasons for the regulation will not render it invalid. *Welch* v. *Swasey,* 214 U. S. 91, 29 Sup. Ct. 567.

The finding is that upon the trial it was conceded that the business conducted by the defendant was within the definition in § 453a, Cum. Sup. 1931, which we have quoted. It is also found that in the conduct of the business the defendant purchased old, worn out, and broken automobiles, dismantled them on the premises, made some of the parts fit for resale, and broke up many of the parts, and in the process used acetylene gas and considerable quantities of gasoline. These facts are important to the constitutional questions principally as reflecting ordinary characteristics of this business. We are entitled also to supplement the statutory definition by facts which are manifestly within the realm of judicial notice. The result discloses an enterprise which clearly is an admissible subject for reasonable regulation within the police power. Even more than a general junk business it is such "as may or may not be a nuisance, depending upon its location or use or local conditions or surroundings." *Finkelstein* v. *Sapulpa,* 106 Okl. 297, 298, 234 Pac. 187. Although in some localities it might not be or become so objectionable as to require suppression or regulation, in others it would doubtless constitute a nui-

sance. "A nuisance may be merely a right thing in the wrong place—like a pig in the parlor instead of the barnyard." *Euclid* v. *Ambler Realty Co., supra,* 388. A condition offensive to sight or hearing or both may be as much of a menace to the public welfare as one which offends the sense of smell. Metzenbaum, Law of Zoning, p. 29 *et seq.,* and cases cited.

A business may be regulated although not a nuisance *per se.* 3 McQuillin, Municipal Corporations (2d Ed.) § 962; *Welch* v. *Swasey,* 193 Mass. 364, 79 N. E. 745. The declaration concerning livery stables in *Reinman* v. *Little Rock,* 237 U. S. 171, 177, 35 Sup. Ct. 511, 59 L. Ed. 900, 903, that the general subject of their regulation with respect to their location and the manner in which they are to be conducted, especially in a thickly populated city, "is well within the range of the power of the State to legislate for the health and general welfare of the people," may with equal appropriateness be applied to motor vehicle junk yards. The subject-matter of this statute is within the domain of the police power.

"The 'due process' clause does not prevent the State from making all needful regulations for the public welfare, and does not require compensation to be made in case these regulations are reasonable, although they do deprive the owner of use of his property. *Cusack* v. *Chicago,* 242 U. S. 526, 37 Sup. Ct. 190. There need be no fear that individual rights will be unduly subordinated to social rights, for each claimed exercise of the police power is subject, first, to the test of whether the case falls fairly within the subjects of the police power, and second, whether the means exercised, in quality and extent, are reasonable, reasonable in time, place and circumstance; and both tests are made and ascertained by the courts." *Windsor* v. *Whitney, supra,* p. 369. Every exercise of the police power

in respect to the use of land is likely to affect property interests adversely, but this does not necessarily render the exercise unconstitutional. *State* v. *Hillman, supra,* p. 103; *Spector* v. *Building Inspector of Milton,* 250 Mass. 63, 70, 145 N. E. 267; 3 McQuillin, Municipal Corporations (2d Ed.) § 942, p. 79.

Here, as in *Reinman* v. *Little Rock, supra,* the particular business affected by the regulation is not affixed to nor dependent upon the realty upon which it is located; it could be conducted elsewhere. See *Finkelstein* v. *Sapulpa, supra.* Since the foundation of the police power is the control of private interests for the public welfare, a statute is not rendered unconstitutional by the fact that private rights of person or property are restrained thereby or that loss will result to individuals from its enforcement. The possession and enjoyment of such rights are subject to such reasonable conditions as may be deemed by the governing authority essential to the welfare of the community. The enjoyment of property is accompanied by such limitations as will not impair the equal enjoyment by others of their property; the pursuit of a trade or business is subject to similar conditions; valid regulations respecting them, varying with the nature of the business, are almost infinite in number and variety. *Crowley* v. *Christensen,* 137 U. S. 86, 11 Sup. Ct. 13; 12 C. J. 931.

As to the claimed discrimination against motor vehicle junk dealers as compared with the regulation of dealers in general junk under Chapter 170 of the General Statutes, the differences in form, nature and extent are readily referable to obvious characteristic distinctions in the nature and conduct of the respective businesses and the accompanying evils and dangers to be guarded against. *State* v. *Cohen,* 73 N. H. 543, 63 Atl. 928; note 30 A. L. R. 1427. The

two classes of business may, therefore, be subjected to different regulations and restrictions. *State* v. *Cullum*, 110 Conn. 291, 294, 147 Atl. 804.

The Act is challenged, further, in that it is claimed that it gives to municipal officials an unbridled discretion, by refusing a certificate of approval, to prevent the continuance of an existing business. There can be no doubt of the legislature's power to delegate regulatory duties to these officers. The practice is usual in such cases and is often the only workable means of administering such a statute. *State* v. *Conlon, supra*. Not only do the provisions of the Act manifest and sufficiently express an intent that these duties are to be performed by an impartial exercise of a reasonable discretion, but ample rights of review by appeal to the courts are expressly conferred. (§ 460a.) *Holley* v. *Sunderland*, 110 Conn. 80, 147 Atl. 300. Also, § 456a, as quoted above, specifies numerous considerations which shall be taken into account in deciding an application, thereby directing, to an extent which is rather unusual, the deliberations of these officials and the bases of the exercise of their discretion. The defendant particularly objects to the inclusion among these of "the sufficiency in number of other such yards or businesses in the vicinity." As we construe this, it indicates, instead of a consideration necessarily adverse to an applicant, that, in some instances at least, public convenience may be served by this kind of business to an extent which would tend to outweigh the accompanying disadvantages, and so justify an approval which should be withheld if the public interest be sufficiently served by other similar enterprises in locations less subversive of the general purposes of the Act. Choice between sites in the same locality, proposed by contesting applicants, must of course be made in accordance with impartial exercise

of a sound discretion based upon comparative suitability of place and person, and subject to review and reversal on appeal if the discretion be abused. On the other hand, an unlimited or excessive number of such yards in the same neighborhood would correspondingly increase the encroachments on the public welfare, with no compensating advantages.

We do regard as exceeding the constitutional limitations upon the exercise of the police power the provision, also contained in § 456a, that a certificate of approval shall not issue unless it is found "that no unreasonable depreciation of surroundings or adjacent property would ensue from the establishing, maintaining or operating of such motor vehicle junk yard or business and that the interests of the municipality require the establishing, operating or maintaining of such yard or business at the location designated." As we have already noted, regulation and restrictions imposed under this power must find justification in the general public welfare rather than in the protection of private interests. Therefore, the effect of the establishment of a motor vehicle junk yard or business upon the value of property adjacent to or immediately surrounding the proposed location may not be made the sole criterion of approval, and depreciation of such value alone is not an admissible ground for the withholding of such approval. Inclusion of "the nature and development of surrounding property" among the considerations specified to be taken into account, as provided later in the same section, accords to this element all of the recognition and influence which legitimately may be given it toward "the preservation of the property of others in the neighborhood growing out of established restrictions." *Norcross* v. *Board of Appeal*, 255 Mass. 177, 185, 150 N. E. 887.

The further requirement of a finding, as a pre-

requisite to approval, that "the interests of the municipality require the establishing, operating or maintaining of such yard or business at the location designated," in one aspect would seem to be prohibitory rather than regulatory. The business in question might well be held to be not so essential to the general welfare that a refusal to recognize it as being required by the public interest could be successfully attacked as unreasonable. Also, it is manifest that the business is not so charged with a public use as to justify a requirement of a showing of public convenience or necessity as a condition precedent to permission to engage in it. *New State Ice Co.* v. *Liebmann*, 285 U. S. 262, 273, 52 Sup. Ct. 371. Here, again, the subsequent provision that in passing upon an application regard shall be had to "the sufficiency in number of such yards or businesses in the vicinity" affords as liberal room for application of the consideration of the public needs as constitutional limitations justify.

We also regard as of doubtful validity the provisions of the definition in § 453a which make determination whether the vehicles displayed are unfitted for reconditioning, and whether the sum of parts or material is equal in bulk to two or more motor vehicles, dependent upon the opinion of the commissioner of motor vehicles or his representative. The effect is to make the question whether a given condition is within the statutory definition, and maintenance of it without a license a violation of the statute, dependent upon the opinion of an administrative official instead of a subject for judicial determination, when necessary, as a question of fact. In a sense these provisions authorize such official to decide what is and what is not to be deemed an infringement of the law, and this is not constitutionally permissible. *State* v. *Normand*, 76 N. H. 541, 85 Atl. 899, 902; *State ex rel. Adams* v.

*Burdge,* 95 Wis. 390, 70 N. W. 347; *Schaezlein* v. *Cabaniss,* 135 Cal. 466, 67 Pac. 75.

Therefore, while the general subject-matter of the statute is within the police power and most of its provisions here involved are unobjectionable on constitutional grounds, we are obliged to hold that the transgressions of constitutional restrictions which we have mentioned afford a valid basis for the demurrer and it should have been sustained.

There is error, the judgment is set aside and the cause remanded to the Court of Common Pleas with direction to sustain the demurrer.

In this opinion the other judges concurred.