SAMUEL CLAPP *v.* FRED ULBRICH, WARDEN OF THE BOROUGH OF WALLINGFORD, ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, QUINLAN and WYNNE, JS.

638

Argued December 3, 1953—decided February 9, 1954

*Charles G. Albom,* with whom, on the brief, was *Nathan G. Sachs,* for the appellant (plaintiff).

*Frederick S. Harris,* with whom was *William F. Wrynn,* for the appellees (defendants).

QUINLAN, J. This is an action for a declaratory judgment to determine the constitutionality and validity of § 4649 of the General Statutes, and for an injunction. The relevant portion of the statute is printed in the footnote.[1] The trial court rendered

---

[1] "Sec. 4649. LICENSE. RECORD. WEEKLY REPORT. Any person desiring to engage in business as a dealer and trader in second-hand bicycles, junk, metals or other second-hand articles in any town, city

judgment for the defendants and denied the prayer for an injunction. The plaintiff has appealed, assigning as error the court's conclusions and the overruling of his claims of law.

The pertinent stipulated facts are as follows: The defendant Ulbrich was at the commencement of the action warden of the borough of Wallingford. The plaintiff purchased premises known as 208 North Colony Street in Wallingford on or about August 11, 1941. He entered military service on March 16, 1942, and returned to civilian life May 1, 1943. He had been engaged in the junk business prior to his period of military service and on his return resumed it at the location on North Colony Street. He kept metal scrap, rags, mattresses and burlap bags exposed to the weather. At no time since May 1, 1943, has he had a license to engage in the junk business in Wallingford. Since that date, he has made applications for a junk dealer's license, designating 208 North Colony Street as his place of business. These applications have been denied, but he has continued to operate as a junk dealer and to maintain his junk yard at 208 North Colony Street. The reason assigned by the warden for refusing to issue a li-

or borough, shall make application to the selectmen of such town, the mayor or chief of police of such city or the warden of such borough, as the case may be, for a license to transact such business within the limits of such town, city or borough, and the selectmen of such town, the mayor or chief of police of such city or the warden of such borough shall issue such licenses to such suitable persons as may apply therefor and may revoke any such license for cause; but the selectmen shall not grant any such license for the carrying on of such business within the limits of any city or borough, and the persons so licensed shall pay, for the benefit of any such town, city or borough, to the authority granting the license, not less than two nor more than ten dollars therefor, to be determined by the authority granting the license. Each license granted under the provisions of this section shall designate the place where such business is to be carried on, and shall continue for one year unless sooner revoked. . . ."

cense was that 208 North Colony Street was not a suitable place for such a business.

The claims concerning the unconstitutionality of § 4649, as set forth in the plaintiff's brief, may be summarized as follows: "By its terms the statute vests uncontrolled and arbitrary licensing power in a public administrative officer because the power is not subject to either substantive or procedural safeguards or standards or judicial review. The statute as phrased permits the intrusion of illegal and impermissible considerations into the official's opinion without any remedy or corrective therefor and is therefore unconstitutional."

The right of the state to provide for the proper regulation of such a business as the junk business without violating the federal constitution cannot be successfully questioned. See *Gundling* v. *Chicago,* 177 U.S. 183, 188, 20 S. Ct. 633, 44 L. Ed. 725; *Engel* v. *O'Malley,* 219 U.S. 128, 137, 31 S. Ct. 190, 55 L. Ed. 128. There is as little warrant to question the authority of the legislature, in the exercise of the police power, to regulate the business without contravening the state constitution. *State* v. *Kievman,* 116 Conn. 458, 463, 165 A. 601; *State* v. *Cohen,* 73 N.H. 543, 546, 63 A. 928; notes, 30 A.L.R. 1427, 88 A.L.R. 970. Indeed, the power is not questioned here but rather the method by which the legislature has undertaken to exercise the power. A large discretion is necessarily vested in the legislature to determine not only what the interests of public convenience and welfare require but what measures are necessary to secure such interests. *Cotter* v. *Stoeckel,* 97 Conn. 239, 244, 116 A. 248; *Young* v. *Lemieux,* 79 Conn. 434, 440, 65 A. 436, 600; *State* v. *Kievman,* supra, 464. It is not fatal to the validity of the statute that standards are

not prescribed in greater detail. *Lerner* v. *Delavan,* 203 Wis. 32, 37, 233 N.W. 608. It may be of some significance that, notwithstanding the length of time a statute requiring the licensing of junk dealers had been in operation in the state (Public Acts 1864, c. 23) its constitutionality has never been called in question.

The purpose of such a statute is not "to prevent or curtail the business of dealing in junk or other second-hand articles, but to regulate the business by causing the dealers or traders therein to become registered," in the public interest, as a protection against the crime of larceny. *State* v. *Rosenbaum,* 80 Conn. 327, 329, 68 A. 250; *State* v. *Cohen,* 73 N.H. 543, 545, 63 A. 928. It undertakes to provide for the detection of stolen articles, for their restoration to their owners, and against criminal activities more apparent in larger communities. *Commonwealth* v. *Silverman,* 220 Mass. 552, 554, 108 N.E. 358. It is to assure that the junk business will be conducted in a legitimate manner that the statute provides that licenses shall be issued to "suitable persons."

Having in mind the purpose of the statute, we turn now to an interpretation of it. The controlling phrase, so far as the issues in the present case are concerned, is that the public official "shall issue such licenses to such suitable persons as may apply therefor." This makes it mandatory upon the official to issue the license to the applicant if the latter is a suitable person. The term "suitable person" has a fixed connotation in our law. *State* v. *Vachon,* 140 Conn. 478, 485, 101 A.2d 509; *Hopson's Appeal,* 65 Conn. 140, 143, 31 A. 531. When it is once established as a fact that an applicant for a junk dealer's license is a suitable person, the public

official designated by the statute has no discretion. It becomes his duty to issue the license as a ministerial act. He can be compelled to perform that act by mandamus. *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 12, 37 A.2d 689; *State ex rel. Foote* v. *Bartholomew,* 103 Conn. 607, 615, 132 A. 30.

Nor does the statute give to the issuing official any power to decide where the business is to be conducted under the license. It is true that the statute provides: "Each license granted under the provisions of this section shall designate the place where such business is to be carried on. . . ." This sentence, however, means nothing more than that the location of the business to be conducted pursuant to the license shall be stated in the license. It does not mean that the issuing official is given any authority to disapprove the location selected by the applicant or still less to refuse the license on the ground that the location is not suitable. The determination of the suitability of the location may be a matter for the zoning authorities, if any, to pass upon, but not the official charged with the duty of issuing the license.

In the light of this interpretation of the statute, all of the claims of unconstitutionality advanced by the plaintiff lose their force. It is permissible to regulate junk dealers in the interests of public safety. Under the statute, all persons dealing in junk are accorded equal treatment. See *State* v. *Cullum,* 110 Conn. 291, 294, 147 A. 804. Inasmuch as the issuance of a license is purely a ministerial act, no hearing is required as a preliminary to it. No standard other than that the applicant is a suitable person is required. Nor is it essential that the statute within itself provide for an appeal to a court. If an applicant is, as a matter of fact, a

suitable person and his application is improperly denied, his recourse is by way of mandamus. As we said in *State* v. *Vachon,* 140 Conn. 478, 485, 101 A.2d 509, "It is not essential to the constitutionality of a statute which authorizes an administrative board to make orders or grant licenses that it contain a provision for an appeal, in the technical sense, from the board's action. If any person claims to be harmed by such an order, his constitutional right to due process is protected by his privilege to apply to a court." We are satisfied that the statute in question is not unconstitutional.

There is no error.

In this opinion the other judges concurred.