The defendant, after a trial to the jury, was convicted on three counts for violation of the following: (1) § 21-11 of the General Statutes, for engaging in business as a junk dealer without having complied with the requirements of that statute; (2) § 29-53 of the General Statutes, in failing to comply with an order of the fire marshal for the elimination of a fire hazard; and (3) § 11-1.7 of the revised zoning ordinance of the city of Norwich, for engaging in the sale, storage and sorting of junk, waste, discarded or salvaged materials, machinery, or equipment, when the operation was not conducted within a building or enclosed by an eight-foot-high tight board or other solid fence.
In his appeal, the defendant has assigned error in the court's denial of his motion to set aside the verdict because it was not supported by the evidence or was contrary to the evidence; in the court's refusal to charge the jury as requested by the defendant; and in its erroneously charging the jury in certain other respects. A charge to the jury must be tested by the claims of proof in the finding.Sears v. Curtis, 147 Conn. 311, 316. Where the claim is that the verdict was not supported by the evidence, that claim must be tested by the evidence.Messier v. Zanglis, 144 Conn. 449, 455. A ruling on a motion to set aside the verdict is reviewed on the evidence and not on the finding. State v. Devine,149 Conn. 640, 654; Maltbie, Conn. App. Proc. § 185. *Page 190 
There is no substantial dispute on the following facts: The defendant was engaged in business in the city of Norwich. In the operation of this business, he sold or offered for sale secondhand furniture, plate glass and antique household furniture, china and glassware. A large number of the items sold or offered for sale consisted of used household furniture, household appliances, and miscellaneous secondhand articles, many of which were in a dilapidated and unusable condition; and on premises outside the building were accumulated, for the purpose of sale, salvage items such as shutters and columns from razed buildings as well as broken boxes, broken ranges, broken pieces of furniture and other materials which were not fit for any immediate use and were more properly suitable for destruction or dumping. Also on the exterior premises there were present dismantled portions of window frames, wagon wheels, old bicycles, and window sashes with the panes of glass broken, all of which, including an old mattress, were piled indiscriminately around the building. There was no eight-foot-high board fence enclosing the premises. Inside the building were a large number of wooden articles, excelsior, salvage items and other discarded materials of an inflammable nature, so placed and stored about the premises as to constitute a fire hazard and seriously interfere with ingress and egress.
The principal claim made by the defendant is that he was not required to comply with the provisions of § 21-11[1] or any other provision pertaining to licensing and regulatory requirements under chapter 405, entitled "Junk Dealers." He asserts exemption *Page 191 
from the operation of these provisions under § 21-14, which reads as follows: "The provisions of this chapter [c. 405] shall not apply to any dealer in motor vehicles, as defined in chapter 246, nor to any dealer in antique household furniture, china or glassware." The predecessor of § 21-11 was originally enacted as Public Acts 1864, chapter 23. It has undergone various revisions but has substantially preserved its original form as a licensing statute applicable to junk dealers. The statute has been held to be constitutional, as being a proper exercise of the police power in regulating junk dealers in the interest of public safety. Clapp v. Ulbrich,140 Conn. 637, 640, 642. In an earlier decision construing this statute, our Supreme Court of Errors has said: "It is not the purpose of the law to prevent or curtail the business of dealing in junk or other second-hand articles, but to regulate the business by causing the dealers or traders therein to become registered, as licensees, and to submit to public inspection all articles of this class received by them. The junk-shop, when conducted by a dishonest dealer, is likely to become a `fence' or place where burglars and thieves can dispose of their plunder without inquiry and conceal their identity; and the shop of an honest dealer may be made use of by such criminals as a place to dispose of their stolen goods. The legislature has considered it to be in the public interest to have the business so regulated that the authorities of the town or city where the business is conducted shall have open to them a record of the articles received by any such dealer or trader, with the name and a description of the person from whom received, and shall also have an opportunity to inspect the articles received by such dealer. The statute in terms requires only dealers or traders, the persons conducting the business, to be licensed. It punishes licensed dealers for failure to keep the book, make the return, and permit the *Page 192 
inspection required by the statute, and punishes every person who is a dealer without a license. It does not require a license from every person who, not being a dealer or trader therein, buys or sells junk and second-hand articles, nor impose a penalty upon every such person who buys or sells without a license." State v. Rosenbaum, 80 Conn. 327, 329.
The plaintiff claims exemption under § 21-14, which was first enacted as chapter 172 of the Public Acts of 1925. Since 1864, economic developments have been such as to require some obvious exemptions, certainly to exclude automobile dealers, who as a matter of general and common knowledge deal to a substantial extent in used and secondhand automobiles, and to remove from the unwarranted stigma and discipline of the junk-dealer statute legitimate establishments appealing to a discriminate clientele in the sale of antiques. This latter exemption represented an enlightened concession that the outmoded and replaced household furnishings, frugally hoarded in attic and barn loft and becoming increasingly marketable, were not junk. In support of his claim, the defendant offered photographic exhibits showing a large accumulation of objects of furniture and household adornment as well as ceramics and glassware, all of which convey the impression of antiquity and usefulness. It is not questioned by the prosecution that these objects, as shown in the exhibits, fall within the general classification of antiques; and by no reasonable interpretation could they be regarded as discarded or secondhand material or junk within the definitions of § 21-9[2] or § 21-11. It must be concluded, therefore, *Page 193 
that the defendant did, on the date charged, conduct a business as a dealer in antique household furniture, china and glassware.
The contention of the state, however, is that such business, to be exempt, must be the exclusive business of the defendant, and that, although he would not be required to obtain a license for the portion of his business having to do with antiques, nevertheless he was not excused from qualifying for and obtaining a license in connection with the portion of his business which the state describes as dealing in junk or discarded or secondhand materials. In support of its position, the state points out that only about 25 percent of the cash volume of the defendant's operation was attributable to the antique business, whereas at least an equal portion of the gross receipts was derived from the junk or secondhand business, and that with respect to the latter business a license was required of him. It is undisputed that the larger part of the defendant's business was the sale and installation of flat and plate glass, and with this we are not concerned. It is also plain that the defendant did not maintain his antique business as a mere subterfuge for trading in junk.
Viewing the statute in the light of the interpretations quoted above, we are inclined to the conclusion that the words "secondhand material" or "second-hand articles," as used in chapter 405, are not inclusive of all secondhand items. The rule of "ejusdem generis" is here applicable. In a criminal statute,[3]
where general words follow an enumeration of persons or things by words of particular and specific meaning, the general words will not be construed in their widest sense but are to be held as *Page 194 
applying only to persons or things of the same general kind or class as those specifically enumerated. See State v. Certain Contraceptive Materials,126 Conn. 428, 431. When we apply this principle in the construction of the statute before us and bear in mind the public purpose sought to be accomplished, it does not appear that every secondhand article or item is embraced within the statutory intendment. It is common knowledge that many dealers take in trade, so to speak, not only usable secondhand articles but also those which may properly be classified as junk, in order to effectuate a retail sale. If the language of the statute were to be construed as widely as claimed by the state, then the statute would be applicable to numerous business enterprises such as hardware establishments, dealing to some degree in secondhand power mowers, tools and appliances of various kinds; marine dealers, selling secondhand boats and motors; and furniture stores, taking in trade, in various conditions of usefulness, secondhand refrigerators, furniture, household wares and the like. The distinction to be made here is between secondhand articles and junk. The word "secondhand" in its generally accepted and commonly understood meaning denotes an article that has been used but still, in its present state, possesses utility for the purpose for which it was originally intended. Junk, on the other hand, includes scrap, waste and discarded materials, possessing usefulness, if any, only through conversion or reduction into their components.
While much of the material cluttering the defendant's premises appears from the exhibits to have been discarded and waste material, possessing no apparent usefulness, it is also apparent that its presence could have been accounted for simply by the defendant's lethargy in failing to have the material removed and dumped. There is no evidence *Page 195 
from which it could be reasonably found that the defendant engaged or intended to engage in trading or dealing in such material or that any market for it in fact existed. On the other hand, the evidence is clear that the defendant did engage in dealing and trading in antiques.
With reference to the defendant's business and the statutory exemption claimed by him, the court charged the jury as follows: "Now, `antiques' is defined as follows — the word `antique' is defined in Webster's New International Dictionary (2d Ed.) as follows: `1. In general, anything very old; . . . A relic or object of ancient art; collectively, theantique, the remains or style of ancient art, as busts, statutes, paintings and vases. . . . A piece of furniture, tableware, or the like, made at a much earlier period than the present.'. . . The question you must decide is whether or not the defendant sold secondhand articles such as furniture, or other secondhand household equipment or accessories. The fact the defendant may have dealt in antique household furniture, china, or glassware at the same time is not material, for when the defendant dealt in such antique articles he was an antique dealer, and this statute, as I have pointed out, does not apply to such a dealer. But when the defendant engaged in the business of a dealer and trader in secondhand articles, if you are satisfied that he did, the defendant will thereby become engaged in a business of dealing and trading in secondhand articles."
In this portion of the charge there was error. Section 21-14 must be construed as granting the defendant, in the conduct of his business, a personal exemption and not a qualified exemption limited to a severable part of his entire commercial enterprise. The licensing statute, § 21-11, and the registration statute, § 21-10, have for their primary object the *Page 196 
identification and licensing, as junk dealers, of suitable persons, for the protection of the public; and the acknowledged reason for such legislation is the exercise of supervision and control over persons who by the nature of their trade may not be wholly above suspicion. Such regulation obviously would have no application to those engaged in a business over which the police power cannot extend; and as to such persons no determination of suitability can be required without infringing their constitutional guarantee of equal protection of the laws. SeeState v. Conlon, 65 Conn. 478, 486, 489.
The charge also was too confining as to the definition of "antiques." It was evidently based upon language contained in State v. Shuster, 145 Conn. 554,559. That case may be distinguished on its facts from the case before us; for there the question reviewed was the propriety of classifying antiques as separate and different from reproductions and, by reason of that classification, exempting the former from the operation of the statute against selling on Sunday. Here, no issue was raised that the merchandise dealt in was not classifiable, to a large extent in turnover and perhaps preponderantly in value, as antiques within the exemption statute. By the relating of such objects to what might be found in museums in the nature of works of art, ancient or antiquarian, the jury were likely to be misled in their understanding of the word "antique" as used in the statute. The meaning that is intended is that which is commonly and generally accepted by people of reasonable discrimination and not necessarily that which might be attached to it by connoisseurs exercising a critical and exact judgment. While there is implied in the word "antique" an original merit in the object, which merit is enhanced by age, it is a datum of general observation that the word, as commonly used, signifies an object *Page 197 
which, though decorative and appealing, owes its unique value mainly to the fortuity of survival.
In our view of the case, the defendant was entitled to the exemption provided for in § 21-14 and consequently was not required to comply with the requirements of § 21-11. There was therefore no question of fact to submit to the jury on the first count. The motion to set aside the verdict as to that count should have been granted.
With respect to the conviction on the second count, the only errors claimed by defendant to have been committed by the trial court were in charging the jury regarding the reasonableness of the time limited by the fire marshal for compliance with his order under § 29-53 for the abatement of fire hazards. The defendant had requested an instruction that if the jury found that the fire marshal did not allow a sufficient length of time within which to abate the conditions complained of, they should acquit the defendant on that count. It appeared from the evidence that the notice amounted to eight days, although there was actually no compliance from the date of the order on April 24 to June 11, the date of final inspection; and there is nothing in the evidence to suggest that there was ever any substantial compliance with the order. The court charged that if the time given the defendant for compliance "was so clearly unreasonable and arbitrary as to border on capriciousness, then [the jury] might find that there was a wrongful exercise of discretion." The charge of the court was substantially correct and contained all that the defendant was entitled to. It was the duty of the fire marshal to fix a reasonable time for compliance. It was not open to the jury to substitute their own judgment as to the length of time that would be reasonable but only to determine whether under all the circumstances the period of time was reasonably *Page 198 
fixed by the fire marshal. The question, moreover, is, on the whole, academic, because no claim was made that the defendant had complied with the order at any time whatsoever or that he made any genuine effort at compliance. This assignment of error is without merit.
In his final assignment, the defendant claims error in the refusal of the court to charge in accordance with his requested instruction. The ordinance which the defendant was accused of having violated permits, in the zone where his business was located, "the sale, storage and sorting of junk, waste, discarded or salvaged materials, machinery, or equipment, but not including processing, provided such operation is conducted within a building or is enclosed by an eight (8) foot high tight board or other solid fence." The requested instruction was no more than a repetition of the words of the ordinance. The charge of the court on the third count was adequate, and there was ample evidence on which the jury could find the defendant guilty.
 There is no error in the judgment on the second and third counts; there is error as to the first count, the judgment as to that count is set aside, and the case is remanded with direction to grant the motion to set aside the verdict on the first count and to modify the judgment accordingly.
In this opinion PRUYN and JACOBS, JS., concurred.