EDWARD M. TIMKO ET AL. *v.* L. A. CHOTKOWSKI, DIRECTOR OF HEALTH OF THE TOWN OF BERLIN

SUPERIOR COURT        HARTFORD COUNTY        FILE NO. 145772

Memorandum filed May 9, 1966

*Schatz & Schatz,* of Hartford, for the plaintiffs.

*Harry N. Jackaway,* of Kensington, for the defendant.

PARSKEY, J.    Plaintiffs, Mr. and Mrs. Edward Timko, are the owners of certain property situated on the southerly side of Reservoir Road in the town of Berlin; the property is located about a mile from the town sewerage system.  At the time of purchase in 1958, the property was wet and swampy and subject to flooding and accordingly was designated as a flood plain zone under the Berlin zoning regulations.    The plaintiffs brought in a considerable amount of fill, after which the property was placed in a residential zone.

Defendant is the Berlin health director.    Under § 12.03.07 of the Berlin zoning regulations, "no zoning permit or certificate of occupancy shall be issued until there has been received from the Health Director or his agent, a written statement to the effect that the water supply and sewage disposal facilities provided are in conformity with the appropriate regulations." Defendant is also a member of the soil conservation commission which, in 1958, was desirous of including the plaintiffs' property as part of a golf course and open space program.  Five attempts were made by the commission to purchase the property from the plaintiffs, all without success.

About May, 1962, plaintiffs made application to the town building inspector for the construction of a single-family three-bedroom residence and filed with the application a proposed plan for installation of a private sewage disposal system.   When the defendant expressed doubts about the suitabil-

ity of the property for a septic system, the plaintiffs requested James Kissane, then town engineer, to conduct soil tests. Four soil tests were made; two had seepage rates of one inch in twenty minutes, one a rate of one inch in forty minutes and the fourth, one inch in eight minutes. The health director was not satisfied with these results, and on July 9, 1962, immediately after a very heavy rainstorm which thoroughly saturated the ground, three additional tests were made. One had a seepage rate of one inch in twenty minutes, a second, one inch in five and seven-tenths minutes, and a third showed no seepage at all. The regular procedure was for the town engineer to issue septic system permits for any lot on which the seepage tests indicated a percolation rate of one inch in thirty minutes. Upon completion of the tests, Kissane concluded that an adequate sewage disposal system could be installed on the plaintiffs' property. Defendant, nevertheless, refused to approve plaintiffs' application. By letter to Mr. Timko dated May 21, 1963, defendant stated: "A careful analysis of your swampy land on the southern side of Reservoir Road in Kensington has been made. The land has been found to be wet with a high water table and subject to flooding, thus prohibiting the installation of septic tank systems in this area."

Thereafter, the plaintiffs employed Charles Cahn, a civil engineer and land surveyor, who has had extensive experience in the design of sanitary systems, both private and governmental. After inspecting the property and analyzing relevant data, Cahn recommended that additional fill be put in, so as to bring the leaching fields substantially above the water table, and that a swale be constructed on the east side of the property. When these recommendations were carried out, a new application dated July 9, 1964, was filed with the

defendant. This application was also disapproved by the defendant "for reasons as previously given" and for an alleged failure to comply with sewage disposal regulations. Cahn was of the opinion that his septic system plan did comply with the appropriate regulations but in an effort to mollify the defendant proposed additional revisions. Morgan Seelye, the present town engineer, after inspecting the Timko property and the latest revised septic plan, wrote the defendant: "It is my opinion that the system as proposed is well designed and is probably the best that can be devised for the area in question, as it is 5 feet above the present water table and 18 inches above the maximum expected water surface. However, because the original ground could not be tested by our normal methods as outlined on pages 11 and 12 of our Regulations, as it was below the water table, a question could remain whether or not the septic tank effluent will percolate into it." By letter to Cahn Engineers dated August 25, 1964, defendant stated, with respect to the proposed septic system: "My findings are that this system is proposed for an area unsuitable for septic field drainage and that on this basis a permit can not be issued." In late 1964 or early 1965, defendant orally advised Edward Pizzella, an attorney then representing the plaintiffs, that no matter what was done to the land, nothing could possibly be done to permit it to be used for residential purposes and that he would not approve any application unless ordered by a court to do so.

Defendant has no engineering background nor any education or training in geology, hydraulic engineering or hydrostatic pressures. His stated grounds for denying the plaintiffs a permit are based on his determination that the subject property and the proposed septic tank do not comply with the appropriate sewage regulations as fol-

lows: (1) The land is low and swampy; (2) it is subject to flooding; (3) it has a high water table; (4) the bottom of the leaching area is not at least eighteen inches above maximum ground water; (5) there is not a minimum of eighteen inches of filter material below the drain tile; and (6) soil tests were not conducted in original soil. With respect to (1) and (2), the court finds both from the evidence and a visual inspection of the subject property that that portion of the plaintiffs' property on which the plaintiffs propose to construct their dwelling is neither low and swampy nor subject to flooding. In this regard the defendant takes the unusual position that once land is low and swampy it remains so even if filled, unless a mountain of fill is brought in. With respect to (3), the court finds that the surface is about five and one-half feet above maximum ground water. The defendant's construction of "high water table" appears to be related to the relative water level to ground surface; on this basis, whatever else it may be, the water table on the subject property in the area of the proposed residence is not high. Indeed, the level of ground water is unimportant unless it is related to the leaching fields. With respect to (4) and (5), the defendant, on the witness stand, conceded that the proposed septic system complied with the regulations. As for (6), the seven tests conducted by Kissane, the town engineer, were made in original soil on the eastern portion of the subject property and, though they were unacceptable to the defendant, nevertheless complied with the local regulations.

Under § 19-13-B13 of the state public health code, a leaching area having a seepage rate of 5 minutes or less is required to have 125 square feet per bedroom; on a seepage rate of 6 to 10 minutes, 165 square feet per bedroom; on a seepage rate of 11 to

20 minutes, 225 square feet; and 21 to 30 minutes, 250 square feet. The proposed leaching field on the subject property, for a three bedroom house, is 3000 square feet. The soil at the proposed site consists of a top layer of four feet of sand and gravel, a second layer of 6 inches of compact organic material, a third layer of 18 inches of gray silty clay, and a fourth layer of gravel and coarse sand. The proposed septic system at eight separate locations contains broken stone extending through the silty clay to the gravel layer. It is apparent that in an effort to please the defendant the plaintiffs have extended themselves far beyond the requirements of local and state regulations.

The role of the defendant in the present situation is a very limited one; it is to state in writing whether proposed sewage disposal facilities conform with appropriate regulations. If in fact the proposed facilities do conform, his role is purely ministerial. It becomes his duty to so state. If he fails or refuses so to do, he can be compelled to do so by mandamus. *Clapp* v. *Ulbrich,* 140 Conn. 637, 642, (1954). Whatever role the defendant may play as health director to abate nuisances has no bearing on the separate and distinct duty imposed upon him under the zoning regulations.

The defendant asserts two legal claims: (1) mandamus does not lie, because the approval or disapproval of a septic system falls within the defendant's discretionary power as health officer; and (2) the plaintiffs have failed to exhaust their legal remedies by failing to take an appeal to the state health commissioner. With respect to the first claim, the court has already stated its view that the defendant's role is a limited one in this field. It might be noted, however, that even if it were otherwise the result would be the same. "Discretion is not

unconfined and vagrant. It is canalized within banks that keep it from overflowing." *Panama Refining Co. v. Ryan,* 293 U.S. 388, 440. Mandamus will lie where the exercise of discretion is such that there has been a clear error of judgment in the conclusion reached upon a weighing of the relevant factors. *McBee v. Bomar,* 296 F.2d 235, 237 (6th Cir. 1961). In the present case the defendant, when pressed by the court, virtually abandoned all grounds except the claimed failure to take soil tests in original soil. Defendant was unwilling to accept the seven tests made in 1962 and demanded deep-soil tests in 1964. Under § 19-13-B12 of the state public health code, deep-soil tests are required to check for ground water, ledge rock or available good seepage soil below normal depths. Since the ground water had already been located some 5½ feet below surface and since in the opinion of both town and private engineers the proposed septic system was well designed to accomplish its purpose, the requirement of a deep-soil test in this case is a mystery. It is apparent that the soil percolation test which the defendant demanded could be made only at the level of maximum ground water; obviously no such test could be conducted. The defendant's approach to the plaintiffs' problems was completely stylized, for every detour another roadblock, for every solution another problem, for every proposal another rejection. In 1958 defendant decided, for whatever reason, that plaintiffs' property was not suitable for residential purposes, and for the past eight years he was determined not to be dissuaded by the facts. The remedy for such obstinacy is clear, for mandamus is ideally suited to unlock the closed mind.

The defendant's second claim is that plaintiffs' remedy is by appeal to the state health commissioner under § 19-103 of the General Statutes. This section is not applicable to the present case. De-

fendant derives his authority from § 7-153 of the General Statutes.[1] Prior to 1957, this section contained a thirty-day appeal provision to the Court of Common Pleas. This provision was eliminated by Public Acts 1957, No. 13, § 88. Section 19-103, on which the defendant relies, is not applicable. It is contained in chapter 335, which deals generally with the subject matter of abatement of nuisances. Its forty-eight-hour time limit for an appeal could hardly relate to such matters as the refusal to issue a permit or to transmit a statement of conformity with regulations. Since this section, which has been on the statute books a long time, did not cover appeals under § 7-153 prior to 1957, if the legislature had intended it to apply thereafter it would have indicated that intent in some affirmative way.

Accordingly, judgment may enter directing the defendant as director of health of the town of Berlin to issue forthwith a written statement to the effect that the sewage disposal facilities as shown on map entitled "Proposed Drainage Map Edward M. & Evelyn A. Timko, Reservoir Road, Berlin, Conn., prepared by Cahn Engineers, New Haven, Conn., Scale 1" = 40' F. B. 628 July 1964, Rev. August 6, 1964" are in conformity with the appropriate regulations as required by § 12.03.07 of the revised zoning regulations for the town of Berlin, Connecticut.

---

[1] "Sec. 7-153. REGULATION OF SEWERAGE FACILITIES. Any town . . . may, by ordinance, prohibit or regulate the construction of dwellings . . . therein unless the sewerage facilities have been approved by the authorized official of such town . . . ."