Merrimack
No. 2011-723

ENERGYNORTH NATURAL GAS, INC. d/b/a NATIONAL GRID NH

v.

CITY OF CONCORD

Argued: June 13, 2012
Opinion Issued: July 18, 2012

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Ralph F. Holmes* and *Katie Kiernan Marble* on the brief, and *Mr. Holmes* orally), for the petitioner.

*City Solicitor's Office*, of Concord (*James W. Kennedy* and *Danielle L. Pacik* on the brief, and *Mr. Kennedy* orally), for the respondent.

DALIANIS, C.J. The respondent, the City of Concord (City), appeals an order of the Superior Court (*McNamara*, J.) denying summary judgment

to the City and granting it to the petitioner, EnergyNorth National Gas, Inc. d/b/a National Grid NH (National Grid). The City argues that the trial court erroneously determined that RSA 231:185 (2009) and RSA 236:11 (2009) preempted the City's ordinance authorizing it to charge certain roadway fees. We reverse and remand.

The trial court found the following facts to be undisputed. National Grid is a local gas distribution company that owns, maintains, and conducts work related to underground gas distribution pipes throughout New Hampshire. To provide safe and reliable service to its customers, as is its obligation, National Grid must, at times, excavate public roadways to install, maintain, and replace pipes that deliver natural gas. National Grid is also currently under a directive from the New Hampshire Public Utilities Commission to replace cast iron and bare steel gas mains. Additionally, the United States Department of Transportation has required National Grid to test and replace steel pipes and maintain valves.

Before National Grid, or any other entity, can excavate a public roadway in Concord, it must seek an excavation permit from the City. For over a year, the City has conditioned issuance of such a permit upon the payment of "roadway fees." These fees include: (1) a street damage charge of $5.00 per square foot of excavation occurring either on City property or within the paved portions of the public right-of-way; (2) an infrastructure damage charge of $2.50 per square foot of excavation occurring either on City property or within the greenbelt or sidewalk portions of the public right-of-way; and (3) additional charges when excavation occurs within five years after completion of a new, reconstructed, rehabilitated, or overlaid roadway.

In June 2010, National Grid filed a petition seeking declaratory and injunctive relief from the requirement to pay roadway fees, arguing that the fees are preempted by State law and/or are an unlawful tax. The trial court denied National Grid's request for a preliminary injunction. After the parties filed cross-motions for summary judgment, the trial court ruled in National Grid's favor, deciding that State law preempted the City's ordinance. Because the trial court determined that State law preempted the City's imposition of the roadway fees, it did not consider whether they are an unlawful tax. This appeal followed.

## II. Analysis

"We review *de novo* the trial court's application of the law to the facts in its summary judgment ruling." *Brown v. Concord Group Ins. Co.*, 163 N.H. 522, 524-25 (2012) (quotation omitted). We consider all of the evidence presented in the record, and all inferences properly drawn therefrom, in

the light most favorable to the non-moving party. *Id.* at 525. "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." *Id.* (quotation omitted).

National Grid argues, and the trial court determined, that RSA 231:185 and RSA 236:11 impliedly preempt the City's roadway fee ordinance because the ordinance and statutes actually conflict. *See N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 611 (2004) (explaining that implied preemption may be found either: (1) when comprehensiveness and detail of State statutory scheme evinces legislative intent to supersede local regulation; or (2) when State and local regulation actually conflict). For preemption purposes, "[a] conflict exists when a municipal ordinance or regulation permits that which a State statute prohibits or vice versa." *Id.* Even when a local ordinance does not expressly conflict with a State statute, it will be preempted when it frustrates the statute's purpose. *Id.*

Preemption "is essentially a matter of statutory interpretation and construction." *Town of Lyndeborough v. Boisvert Properties*, 150 N.H. 814, 817 (2004). Statutory interpretation is a question of law that we review *de novo. ATV Watch v. N.H. Dep't of Transp.*, 161 N.H. 746, 752 (2011). We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Appeal of Union Tel. Co.*, 160 N.H. 309, 317 (2010). In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* Unless we find that the statutory language is ambiguous, we need not look to legislative intent. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.*

"Where reasonably possible, statutes should be construed as consistent with each other." *Id.* at 319 (quotation omitted). "When interpreting two statutes which deal with similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute." *Id.* (quotation omitted). To the extent two statutes conflict, the more specific statute controls over the general statute. *Ford v. N.H. Dep't of Transp.*, 163 N.H. 284, 294 (2012).

In this case, the parties agree that RSA 231:185 and RSA 236:11 can be interpreted so that they do not contradict each other and so that they lead to reasonable results and effectuate legislative intent. *See Appeal of Union Tel. Co.*, 160 N.H. at 319. Accordingly, for the purposes of this appeal, we assume, without deciding, that both statutes apply.

RSA 231:185 provides: "Every person and every corporation who shall dig up any highway or public ground [for the purpose of laying water or gas pipes] shall restore the highway or ground to *as good condition as it was in before so doing*, without unnecessary delay, and shall take all necessary precautions to protect the public from injury by their acts." (Emphasis added.) RSA 236:11 provides: "Any person, entity, or corporation who excavates or disturbs the shoulders, ditches, embankments, or the surface improved for travel of any highway shall restore such highway *to a condition at least equal to the condition that was present before the excavation or disturbance*." (Emphasis added.)

National Grid asserts that the word "condition" as used in RSA 231:185 and RSA 236:11 includes the life expectancy of the road. The City has not offered a contrary interpretation. In light of the parties' arguments, we assume, without deciding, that National Grid's construction of the word "condition" as used in RSA 231:185 and RSA 236:11 is correct.

Relying primarily upon *Boston Gas Co. v. City of Newton*, 682 N.E.2d 1336 (Mass. 1997), National Grid argues, and the trial court found, that the statutes "assume[] that a street can and should be restored to its former condition," while the ordinance assumes, by imposing a fee, that restoring an excavated street to its former condition "is all but impossible." *Boston Gas Co.*, 682 N.E.2d at 1339. National Grid asserts, and the trial court decided, that the ordinance is preempted because the assumption underlying the ordinance conflicts with the assumption underlying the statutes. *See id.* at 1339-40.

The City argues that its roadway fees are consistent with the pertinent statutes because they "cover[] maintenance costs to repair the roadway after it has been initially patched, which [are] used to restore the excavated roadway to the condition that existed prior to the excavation." The City relies upon "evidence show[ing] that 'when a paved roadway is excavated and then patched with new pavement, the restored/patched paved roadway is not of the same condition of the existing paved roadway structure and thus the overall paved roadway life is reduced.'" The City argues that "[t]his reduction in pavement life will occur 'no matter how well the . . . [excavated] areas are restored.'" Accordingly, the City maintains, its roadway fees are necessary to restore an excavated road to its former condition.

We are not persuaded that when the legislature enacted the statutes at issue, it made any assumption or finding, implied or otherwise, as to whether repaving a paved excavated roadway restored the roadway's original life expectancy. Nothing in the language of the statutes or in their legislative history suggests that the legislature had this in mind. We

conclude, therefore, that the trial court's grant of summary judgment to National Grid based upon this analysis was error.

We are left, therefore, with a factual dispute between the parties as to whether patching an excavated paved roadway with new pavement diminishes or restores its original life expectancy. Because of this genuine issue of material fact, we remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

HICKS and LYNN, JJ., concurred.