NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court–Brentwood District Division
No. 2014-578


MOUNTAIN VIEW PARK, LLC

v.

GERALD ROBSON, JR.

Submitted: April 22, 2015
Opinion Issued: August 11, 2015


David Canada, for Mountain View Park, LLC, self-represented party, by brief.


Gerald Robson, Jr., self-represented party, by brief.


CONBOY, J. The plaintiff-landlord, Mountain View Park, LLC, appeals a decision of the Circuit Court (LeFrancois, J.), in which the court declined to approve an agreement concerning, in part, rent arrearages owed by the defendant-tenant, Gerald Robson, Jr., and issued a writ of possession. We affirm.

The following facts are undisputed. In June 2013, the parties entered into a rental agreement, whereby the defendant rented a mobile home owned by the plaintiff. The defendant eventually fell behind in his rent payments. In May 2014, the plaintiff served the defendant with a demand for rent and an

eviction notice. When the defendant failed to pay the rent arrearages, the plaintiff filed this possession action.

In June 2014, the parties entered into an agreement to cure the defendant's arrearages and avoid his eviction. In the agreement, the defendant acknowledged that his arrearages amounted to $3,125.38, and he agreed to a payment schedule. The agreement specified that the defendant would pay his current monthly rental rate. It also provided that he would pay a certain amount each month towards his arrearages until the arrearages "reach[ed] a zero balance." The agreement further stated that, "[u]pon reaching a zero balance," the plaintiff would "drop[]" the possession action, thus allowing the defendant "to avoid . . . homelessness." The agreement also provided that, if the defendant "fail[ed] to make any of the above payments, the Court shall, upon request, under oath, . . . and without further judicial review, issue a writ of possession to Plaintiff." (Emphasis added.)

Thereafter, the agreement was submitted to the trial court for approval; however, the court declined to approve it. The plaintiff unsuccessfully moved for reconsideration. In its denial of the plaintiff's motion for reconsideration, the court explained that the "agreement provides for issuance of a writ of possession for an indefinite period of time in the future for the nonpayment of future rent not yet due, in addition to the unpaid rent which forms the basis of this eviction action," and that RSA 540:13-c, II (2007) "does not include authority of the court to issue a writ of possession at some indefinite time in the future for the nonpayment of future rent not yet due."

At the plaintiff's request, a hearing was subsequently held in July 2014. Relying upon RSA 540:28 (2007), the court again denied approval of the agreement; the court elaborated that it could not "approve a provision that waives the tenant's rights regarding future rent that is not yet due and payable." The court also found that, although the defendant had made some payments toward his arrearages, he had paid less than the total amount that he owed the plaintiff. Accordingly, the court issued a writ of possession, and this appeal followed.

On appeal, the plaintiff argues that the trial court erred by failing to approve the agreement because RSA 540:13-c, II allows, and RSA 540:28 does not prohibit, such an agreement. The defendant agrees with the plaintiff and asks that we "grant [him] the opportunity to enter into this agreement thereby giving [him] a legal right to stay in [his] home under the stipulations of the agreement."

The issues on appeal involve contractual and statutory interpretation, which are both questions of law; accordingly, our review is de novo. See In the Matter of Liquidation of Home Ins. Co., 166 N.H. 84, 88 (2014). "When interpreting a written agreement, we give the language used by the parties its

2

reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." Id. (quotation omitted). "Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract." Id. (quotation omitted).

In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Petition of Carrier, 165 N.H. 719, 721 (2013). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. When the language of a statute is plain and unambiguous, we need not look beyond the statute itself for further indications of legislative intent. Petition of Malisos, 166 N.H. 726, 729 (2014).

RSA 540:13-c, II provides that:

> Nothing in this section shall be construed to prohibit the parties in a case of nonpayment of rent from agreeing that, in spite of judgment for the plaintiff, a writ of possession shall not be issued, if the defendant makes payments in accordance with a schedule designated in the agreement. However, if such payments are not made when due, a writ of possession shall be issued upon request of the plaintiff.

(Emphasis added.) The plain language of this statute applies only to agreements addressing the nonpayment of rent. Nothing in the statute refers to regular rental payments in accordance with a lease or rental agreement. The statute authorizes parties to enter into an agreement regarding rent arrearage payments that, in order to stay the issuance of a writ of possession, requires the tenant-defendant to pay the arrearages in accordance with an agreed-upon schedule; if the tenant fails to make such arrearage payments, a writ of possession may issue upon the request of the landlord-plaintiff. RSA 540:13-c, II.

By contrast, RSA 540:28 applies to all forms of lease or rental agreements. It provides that "[n]o lease or rental agreement, oral or written, shall contain any provision by which a tenant waives any of his rights under this chapter, and any such waiver shall be null and void." RSA 540:28 (emphasis added).

Here, following the nonpayment of rent by the defendant, the parties entered into an agreement that provided that the plaintiff would not seek a writ of possession so long as the defendant: (1) paid his regular monthly rent; and (2) made payments toward his arrearages in accordance with the agreed upon schedule. The agreement further specified that if the defendant "fail[ed] to make any of the above payments," a writ of possession would be issued upon the plaintiff's request.

3

Although the agreement provided that the plaintiff would not seek a writ of possession so long as the defendant made payments toward his arrearages, the plain language of the agreement also allowed for the issuance of a writ of possession based upon the defendant's failure to pay regular monthly rent for his occupancy after the agreement was entered into. This is prohibited by RSA 540:28. See id. The defendant cannot — in an agreement — waive his right to challenge any possessory action based upon his nonpayment of future monthly rent, as such an agreement would be null and void. See id.; see also, e.g., RSA 540:3, IV (2007) ("If the eviction notice is based on nonpayment of rent, the notice shall inform the tenant of his or her right, if any, to avoid the eviction by payment of the arrearages and liquidated damages in accordance with RSA 540:9."); RSA 540:13-a (2007) (providing for the defense of retaliation); RSA 540:13-d (2007) (providing defenses in cases involving violations of the standards of fitness for health and safety); RSA 540:20 (2007) (allowing parties to appeal decisions to the supreme court). Accordingly, we affirm the trial court's decision declining to approve the agreement.

We observe, however, that, had the agreement been limited to solely addressing the payment of the defendant's rent arrearages and had not included the provision regarding the future payment of regular monthly rent, the plain language of RSA 540:13-c, II would have permitted such an agreement. But, as explained above, the agreement as currently drafted violates RSA 540:28.

The plaintiff asserts that the agreement should be approved because it has "the exact same structure" as similar agreements approved by the trial court in the past. However, in making this argument, the plaintiff disregards the fact that, unlike the agreement at issue here, none of the other agreements in the record contain explicit provisions regarding the future payment of regular monthly rent.

To the extent that the plaintiff asserts that public policy considerations, including the prevention of the defendant's homelessness, require us to reverse the trial court's decision, this argument is made in the wrong forum. Although we appreciate the importance of such considerations, "[m]atters of public policy are reserved for the legislature, and we therefore leave to it the task of addressing the [plaintiff]'s concerns." Petition of Kilton, 156 N.H. 632, 645 (2007). Finally, any issues raised in the notice of appeal, but not fully briefed, are deemed waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

DALIANIS, C.J., and HICKS, J., concurred; LYNN, J., with whom BASSETT, J., joined, dissented.

4

LYNN, J., dissenting.  In the name of "protecting" the rights of tenants, the majority interprets RSA 540:13-c, II (2007) and RSA 540:28 (2007) in a manner that, contrary to the wishes of both the landlord and the tenant before us, all but insures that the former statute will be of no assistance to tenants who have fallen behind in their rent payments.  Because neither the text of the statutes, nor their intended objectives, supports the majority's construction, I respectfully dissent.

At the heart of the statutory interpretation issue in this case is the relationship between RSA 540:13-c, II and RSA 540:28.  This presents a classic case of one statute setting forth a rule of general applicability while another establishes an exception to the general rule that applies to a specific circumstance.  Our methodology of construction in such cases is well-established: "Where reasonably possible, statutes should be construed as consistent with each other."  EnergyNorth Natural Gas v. City of Concord, 164 N.H. 14, 16 (2012) (quotation omitted).  "It is a well-recognized rule of statutory construction that where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the latter will be regarded as an exception to the general enactment where the two conflict."  Appeal of Johnson, 161 N.H. 419, 424 (2011) (quotation omitted); see EnergyNorth Natural Gas, 164 N.H. at 16 ("When interpreting two statutes which deal with similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute.  To the extent two statutes conflict, the more specific statute controls over the general statute." (quotation and citation omitted)); Favazza v. Braley, 160 N.H. 349, 352 (2010) (applying aforesaid rule in construing RSA chapter 526 and RSA chapter 540-A in wrongful eviction action).

Here, RSA 540:28 sets forth the general rule: "No lease or rental agreement . . . shall contain any provision by which a tenant waives any of his rights under [RSA chapter 540], and any such waiver shall be null and void."  The majority correctly interprets this statute to prohibit the enforcement of any agreement whereby a tenant prospectively waives his protections under the chapter with respect to future rent payments.  In other words, the general rule prohibits an eviction based on nonpayment of as-yet-undue rent without the initiation of a new eviction proceeding.

However, when an eviction proceeding is already extant, several sections of RSA chapter 540 provide exceptions to the general rule.  One frequently utilized exception applies when a tenant against whom a writ of possession has been issued by the trial court wishes to appeal to this court.  See RSA 540:25, I (2007).  This provision requires a tenant desiring to pursue an appeal to pay ongoing rent "weekly and in advance" during the pendency of the appeal, and provides that if such rent is not paid, "the [circuit] court shall immediately mail a notice of default to the tenant and issue a writ of possession to the landlord"

5

without the need for the landlord to initiate a new eviction action. RSA 540:25, I; see also RSA 540:20 (2007) (granting circuit court continuing jurisdiction after notice of appeal is filed "for the purposes of collecting rent pending appeal"); RSA 540:13, II(d)(3) (2007) (requiring that writ of summons served on tenant in eviction action be accompanied by notice informing tenant that if he wishes to appeal trial court's ruling, he must pay ongoing rent as it becomes due until final disposition of the appeal).

Another exception to the general rule is found in RSA 540:13-c, I (2007). This statute allows the circuit court, after it has rendered a judgment for the recovery of possession in favor of the landlord, to stay the dispossession of the tenant for up to three months if the court decides "that under all the circumstances justice requires such stay, based on the reasonableness and good faith of the parties in their respective reports, complaints, demands, and evidence." RSA 540:13-c, I. If the court grants such a stay, however, the tenant is required to "pay the landlord weekly in advance the weekly former rent . . . and on default of any such advance weekly payment a writ of possession shall be issued and the sheriff shall evict the tenant as soon as possible." Id. (emphasis added). Again, the plain language of this statute makes clear that if a tenant who has been granted a stay fails to pay in advance the future rent that becomes due during the period of the stay, the writ of possession shall be issued and the tenant evicted without the need for the landlord to commence a new eviction proceeding.

RSA 540:13-c, II, the provision applicable to this case, provides another exception to the general rule. It states:

> Nothing in this section shall be construed to prohibit the parties in a case of nonpayment of rent from agreeing that, in spite of the judgment for the plaintiff, a writ of possession shall not be issued, if the defendant makes payments in accordance with a schedule designated in the agreement. However, if such payments are not made when due, a writ of possession shall be issued upon request of the plaintiff.

RSA 540:13-c, II (emphases added). Focusing on the words "nonpayment of rent," the majority concludes that the statute authorizes agreements that allow for the issuance of a writ of possession at the request of the landlord only where the tenant fails to pay rent that is already due at the time the agreement is made, i.e., rent arrearages, in accordance with the agreement. If the agreement also encompasses the tenant's obligation to make ongoing rent payments, the majority insists that the agreement impermissibly waives the tenant's rights and is unenforceable. Instead of allowing the landlord to request issuance of a writ of possession at the time the agreement is breached, the majority holds that, if what the tenant fails to pay is ongoing rent and not

6

arrearage payments, the landlord must commence an entirely new eviction proceeding.

There are several problems with the majority's reasoning. First, in focusing on the words "nonpayment of rent," the majority fails to give effect to the words that precede them. The statute permits agreements that provide for arrearages to be satisfied through a schedule of payments while allowing a writ of possession to be issued at the landlord's request in the event of breach of the agreement "in a case of nonpayment of rent." RSA 540:13-c, II (emphasis added). What the majority fails to appreciate is that, once initiated, an eviction proceeding remains "a case of nonpayment of rent" until the entire arrearage, as well as ongoing rent payments that become due in the interim, has been paid in accordance with the agreed-upon schedule. By its construction of the statute, the majority, in effect, transforms a single "case" into one involving two tenancies — one covering the period before the agreement and the other the period after it. Nothing in the language of the statute supports the view that the legislature intended it to be interpreted in this fashion. Rather, just as in other circumstances where a tenant is allowed to remain in possession despite his default, see RSA 540:25, I; RSA 540:13-c, I, RSA 540:13-c, II should be construed to permit agreements that require a tenant (1) to pay off the arrearage according to the schedule (2) while also paying all ongoing rent that becomes due until the arrearage is fully retired, and that allows the landlord to obtain a writ of possession for breach of either term of such agreements without the necessity of commencing a new eviction proceeding. Only when the arrearage (and any ongoing rent due in the interim) is fully paid is the matter no longer "a case of nonpayment of rent," and it is only at that point that the landlord should be required to initiate a new eviction proceeding in the event the tenant fails to make rental payments that become due thereafter.[1]

Second, in violation of our canons of construction, the majority adds language to RSA 540:13-c, II that the legislature did not see fit to include. See, e.g., Strike Four v. Nissan N. Am., 164 N.H. 729, 735 (2013). The statute states that, when an agreement has been reached, "a writ of possession shall not be issued, if the [tenant] makes payments in accordance with a schedule designated in the agreement." RSA 540:13-c, II (emphasis added). The majority, however, reads the word "payments" as "payments of past due rent," thus interpreting the pertinent language as if it stated: "a writ of possession shall not be issued, if the [tenant] makes payments of past due rent in accordance with a schedule designated in the agreement." If the legislature intended "payments" to be limited to past due rent payments, it would have

---

[1] The agreement at issue here is entirely consistent with what, in my view, is this proper construction of the statute. The agreement specifically provides that, upon reaching a zero balance on the arrearage, the landlord will "drop" the possessory action. Because the action would be terminated at that point, any failure to make rent payments due thereafter would not be subject to the agreement and would therefore require the landlord to initiate a new possessory action in order to evict the tenant.

7

said so.  By adding such language, the majority effectively amends, rather than merely construes, the statute.

Third, the majority's interpretation of the statute fails to take account of the fact that money is fungible.  Consider the following simple example.  A lease requires the tenant to pay rent of $500 per month.  When he is in default in the amount of $1,000 (two months' rent), the landlord and tenant enter into an agreement that requires the tenant to retire the arrearage at the rate of $200 per month for the next five months while also timely making all ongoing rent payments.  After complying with the agreement for two months, the tenant is able to pay only $600 in the third month.  Could the landlord obtain a writ of possession simply by asking the circuit court to issue it, or must he initiate an entirely new eviction proceeding?  If the landlord requests issuance of the writ, the tenant will naturally claim that he has fully paid the amount of the arrearage, that the shortfall therefore is attributable to ongoing (future) rent, and that no writ of possession may issue absent an entirely new eviction proceeding.  The landlord, on the other hand, will claim that the shortfall should be attributed to the arrearage, thus allowing for issuance of the writ without a new proceeding.  How would the court resolve this issue?  Under the majority's construction of the statute, the answer is anybody's guess, whereas under the construction that I assert to be correct the answer is clear — the tenant has breached the agreement and the writ of possession may be issued at the landlord's request and without the need to commence a new eviction proceeding.

Fourth, the majority's construction of the statute raises the specter that the landlord will not be able to evict the tenant without commencing a new action even where it is absolutely clear that the tenant is in breach because of his failure to make the agreed-upon payments on the arrearage.  If, as the majority holds, RSA 540:13-c, II does not permit agreements that require payment of ongoing rent during the scheduled period until the arrearage is fully retired, then the landlord's acceptance of any future rent payments arguably may be deemed a waiver of his right to recover possession without undertaking a new eviction proceeding.  Cf. Miller v. Slania Enters., 150 N.H. 655, 661 (2004) (citing Corcoran Management Co., Inc. v. Withers, 513 N.E.2d 218, 222-23 (Mass. App. Ct. 1987) for the "general rule . . . that after effective date of valid notice to terminate tenancy, payment of rent in advance for period after termination of tenancy, and acceptance by landlord thereof, is prima facie evidence of waiver of right to recover possession absent new notice").[2]

---

[2] It must be noted that, although RSA 540:13, VII (2007) permits a landlord to accept rental arrearage payments while a possessory action is pending without being deemed to have created a new tenancy, provided the landlord informs the tenant in writing of the landlord's intention to proceed with the eviction, this section would not preclude the tenant from asserting, under the majority's construction of RSA 540:13-c, II, the waiver position asserted in the text because, by its terms, RSA 540:13, VII does not apply to the acceptance of future rent payments.  See Miller, 150 N.H. at 660.

Finally, the majority's construction of RSA 540:13-c, II undermines the beneficent goals the statute is designed to achieve. The obvious purpose of this statute is to permit landlords and tenants, when each believes it is in his or her interest to do so, to maintain their ongoing relationship despite the fact that the tenant has fallen behind in rent payments. The tenant benefits by avoiding eviction and by being given more time to "catch up" on the arrearage. The landlord benefits because, after establishing the right to possession and obtaining a judgment, the landlord avoids the need to find a new tenant while retaining the ability to quickly execute on the judgment merely by requesting issuance of the writ of possession if the tenant fails to comply with the terms of the agreement. The landlord also benefits by being paid the arrearages without the need for further court proceedings and the uncertainty of trying to collect on any money judgment the landlord may obtain.

By holding that the statute precludes the parties from agreeing that the landlord may obtain possession without instituting a new proceeding if the tenant defaults in the payment of ongoing rent during the period in which the tenant has agreed to retire the arrearage, the majority eliminates one of the major incentives for a landlord to enter into such an agreement. This means that landlords will be less likely to do so, which in turn means that tenants will be deprived of the opportunity for a second chance to remain in their homes. Under the majority's construction of the statute, the landlord is deprived of the ability to obtain possession without the delay and expense of filing a new action if the tenant, instead of "catching up" on his or her obligations, merely reallocates payments from ongoing rent to payments on the arrearage. Because it is fair to assume that most such agreements will call for arrearage payments that are smaller than the amount of the ongoing rent, it is hard to imagine why any landlord who has already obtained a judgment that permits eviction would find such an arrangement at all attractive. Much more likely is that a landlord who has already obtained a writ of possession and who understands that, pursuant to the majority's construction, a new eviction proceeding will be required if the tenant is unable to pay both the scheduled arrearage amount and ongoing rent, will conclude that entering into such agreements is simply not worth it.[3] Unfortunately, tenants — whom the majority believes it is protecting — likely will bear the brunt of the adverse effects of today's decision. See AIMCO Props. V. Dziewisz, 152 N.H. 587, 591 (2005) (describing potential adverse consequences for tenants that may result from eviction).

---

[3] To the extent that the majority's opinion suggests that the landlord in this case has previously entered into agreements for the payment of an arrearage with no mention of the payment of ongoing rent and no explicit language allowing the landlord to obtain a writ of possession on request if the tenant did not pay both the arrearage and ongoing rent, I note that the language of such agreements is ambiguous on this point and the landlord's brief suggests that he regarded the obligation to pay ongoing rent as an implicit term of these agreements. Now that the majority has made clear that the requirement to pay ongoing rent during the arrearage period is prohibited, it seems doubtful that the landlord will enter into such agreements in the future.

Because the majority's construction of RSA 540:13-c, II is unsupported by the plain language of the statute, is inconsistent with the statutory scheme, and leads to results clearly contrary to what the legislature intended, I respectfully dissent.

BASSETT, J., joins in the dissent.