LYNN, J.,
dissenting. In the name of “protecting” the rights of tenants, the majority interprets RSA 540:13-c, II (2007) and RSA 540:28 (2007) in a *122 manner that, contrary to the wishes of both the landlord and the tenant before us, all but insures that the former statute will be of no assistance to tenants who have fallen behind in their rent payments. Because neither the text of the statutes, nor their intended objectives, supports the majority’s construction, I respectfully dissent.
At the heart of the statutory interpretation issue in this case is the relationship between RSA 540:13-c, II and RSA 540:28. This presents a classic case of one statute setting forth a rule of general applicability while another establishes an exception to the general rule that applies to a specific circumstance. Our methodology of construction in such cases is well-established: ‘Where reasonably possible, statutes should be construed as consistent with each other.” EnergyNorth Natural Gas v. City of Concord, 164 N.H. 14, 16 (2012) (quotation omitted). “It is a well-recognized rule of statutory construction that where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the latter will be regarded as an exception to the general enactment where the two conflict.” Appeal of Johnson, 161 N.H. 419, 424 (2011) (quotation omitted); see EnergyNorth Natural Gas, 164 N.H. at 16 (“When interpreting two statutes which deal with similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute. To the extent two statutes conflict, the more specific statute controls over the general statute.” (quotation and citation omitted)); Favazza v. Braley, 160 N.H. 349, 352 (2010) (applying aforesaid rule in construing RSA chapter 526 and RSA chapter 540-A in wrongful eviction action).
Here, RSA 540:28 sets forth the general rule: “No lease or rental agreement... shall contain any provision by which a tenant waives any of his rights under [RSA chapter 540], and any such waiver shall be null and void.” The majority correctly interprets this statute to prohibit the enforcement of any agreement whereby a tenant prospectively waives his protections under the chapter with respect to future rent payments. In other words, the general rule prohibits an eviction based on nonpayment of as-yet-undue rent without the initiation of a new eviction proceeding.
However, when an eviction proceeding is already extant, several sections of RSA chapter 540 provide exceptions to the general rule. One frequently utilized exception applies when a tenant against whom a writ of possession has been issued by the trial court wishes to appeal to this court. See RSA 540:25, I (2007). This provision requires a tenant desiring to pursue an appeal to pay ongoing rent “weekly and in advance” during the pendency of the appeal, and provides that if such rent is not paid, “the [circuit] court shall immediately mail a notice of default to the tenant and issue a writ of *123 possession to the landlord” without the need for the landlord to initiate a new eviction action. RSA 540:25, I; see also RSA 540:20 (2007) (granting circuit court continuing jurisdiction after notice of appeal is filed “for the purposes of collecting rent pending appeal”); RSA 540:13, II(d)(3) (2007) (requiring that writ of summons served on tenant in eviction action be accompanied by notice informing tenant that if he wishes to appeal trial court’s ruling, he must pay ongoing rent as it becomes due until final disposition of the appeal).
Another exception to the general rule is found in RSA 540:13-e, I (2007). This statute allows the circuit court, after it has rendered a judgment for the recovery of possession in favor of the landlord, to stay the dispossession of the tenant for up to three months if the court decides “that under all the circumstances justice requires such stay, based on the reasonableness and good faith of the parties in their respective reports, complaints, demands, and evidence.” RSA 540.T3-C, I. If the court grants such a stay, however, the tenant is required to “pay the landlord weekly in advance the weekly former rent... and on default of any such advance weekly payment a unit of possession shall be issued and the sheriff shall evict the tenant as soon as possible.” Id. (emphasis added). Again, the plain language of this statute makes clear that if a tenant who has been granted a stay fails to pay in advance the future rent that becomes due during the period of the stay, the writ of possession shall be issued and the tenant evicted without the need for the landlord to commence a new eviction proceeding.
RSA 540:13-c, II, the provision applicable to this case, provides another exception to the general rule. It states:
Nothing in this section shall be construed to prohibit the parties in a case of nonpayment of rent from agreeing that, in spite of the judgment for the plaintiff, a writ of possession shall not be issued, if the defendant makes payments in accordance with a schedule designated in the agreement. However, if such payments are not made when due, a writ of possession shall be issued upon request of the plaintiff.
RSA 540:13-c, II (emphases added). Focusing on the words “nonpayment of rent,” the majority concludes that the statute authorizes agreements that allow for the issuance of a writ of possession at the request of the landlord only where the tenant fails to pay rent that is already due at the time the agreement is made, ie., rent arrearages, in accordance with the agreement. If the agreement also encompasses the tenant’s obligation to make ongoing rent payments, the majority insists that the agreement impermissibly waives the tenant’s rights and is unenforceable. Instead of allowing the landlord to request issuance of a writ of possession at the time the *124 agreement is breached, the majority holds that, if what the tenant fails to pay is ongoing rent and not arrearage payments, the landlord must commence an entirely new eviction proceeding.
There are several problems with the majority’s reasoning. First, in focusing on the words “nonpayment of rent,” the majority fails to give effect to the words that precede them. The statute permits agreements that provide for arrearages to be satisfied through a schedule of payments while allowing a writ of possession to be issued at the landlord’s request in the event of breach of the agreement “in a case 0/nonpayment of rent.” RSA 540:13-c, II (emphasis added). What the majority fails to appreciate is that, once initiated, an eviction proceeding remains “a case of nonpayment of rent” until the entire arrearage, as well as ongoing rent payments that become due in the interim, has been paid in accordance with the agreed-upon schedule. By its construction of the statute, the majority, in effect, transforms a single “case” into one involving two tenancies — one covering the period before the agreement and the other the period after it. Nothing in the language of the statute supports the view that the legislature intended it to be interpreted in this fashion. Rather, just as in other circumstances where a tenant is allowed to remain in possession despite his default, see RSA 540:25, I; RSA 540:13-c, I, RSA 540:13-c, II should be construed to permit agreements that require a tenant (1) to pay off the arrearage according to the schedule (2) while also paying all ongoing rent that becomes due until the arrearage is fully retired, and that allows the landlord to obtain a writ of possession for breach of either term of such agreements without the necessity of commencing a new eviction proceeding. Only when the arrearage (and any ongoing rent due in the interim) is fully paid is the matter no longer “a case of nonpayment of rent,” and it is only at that point that the landlord should be required to initiate a new eviction proceeding in the event the tenant fails to make rental payments that become due thereafter.[1]
Second, in violation of our canons of construction, the majority adds language to RSA 540:13-c, II that the legislature did not see fit to include. See, e.g., Strike Four v. Nissan N. Am., 164 N.H. 729, 735 (2013). The statute states that, when an agreement has been reached, “a writ of possession shall not be issued, if the [tenant] makes payments in accordance with a schedule designated in the agreement.” RSA 540:13-c, II *125 (emphasis added). The majority, however, reads the word “payments” as “payments of past due rent,” thus interpreting the pertinent language as if it stated: “a writ of possession shall not be issued, if the [tenant] makes payments of past due rent in accordance with a schedule designated in the agreement.” If the legislature intended “payments” to be limited to past due rent payments, it would have said so. By adding such language, the majority effectively amends, rather than merely construes, the statute.
Third, the majority’s interpretation of the statute fails to take account of the fact that money is fungible. Consider the following simple example. A lease requires the tenant to pay rent of $500 per month. When he is in default in the amount of $1,000 (two months’ rent), the landlord and tenant enter into an agreement that requires the tenant to retire the arrearage at the rate of $200 per month for the next five months while also timely making all ongoing rent payments. After complying with the agreement for two months, the tenant is able to pay only $600 in the third month. Could the landlord obtain a writ of possession simply by asking the circuit court to issue it, or must he initiate an entirely new eviction proceeding? If the landlord requests issuance of the writ, the tenant will naturally claim that he has fully paid the amount of the arrearage, that the shortfall therefore is attributable to ongoing (future) rent, and that no writ of possession may issue absent an entirely new eviction proceeding. The landlord, on the other hand, will claim that the shortfall should be attributed to the arrearage, thus allowing for issuance of the writ without a new proceeding. How would the court resolve this issue? Under the majority’s construction of the statute, the answer is anybody’s guess, whereas under the construction that I assert to be correct the answer is clear — the tenant has breached the agreement and the writ of possession may be issued at the landlord’s request and without the need to commence a new eviction proceeding.
Fourth, the majority’s construction of the statute raises the specter that the landlord will not be able to evict the tenant without commencing a new action even where it is absolutely clear that the tenant is in breach because of his failure to make the agreed-upon payments on the arrearage. If, as the majority holds, RSA 540:13-c, II does not permit agreements that require payment of ongoing rent during the scheduled period until the arrearage is fully retired, then the landlord’s acceptance of any future rent payments arguably may be deemed a waiver of his right to recover possession without undertaking a new eviction proceeding. Cf. Miller v. Slania Enters., 150 N.H. 655, 661 (2004) (citing Corcoran Management Co., Inc. v. Withers, 513 N.E.2d 218, 222-23 (Mass. App. Ct. 1987) for the “general rule ... that after effective date of valid notice to terminate tenancy, payment of rent in *126 advance for period after termination of tenancy, and acceptance by landlord thereof, is prima facie evidence of waiver of right to recover possession absent new notice”).[2]
Finally, the majority’s construction of RSA 540:13-c, II undermines the beneficent goals the statute is designed to achieve. The obvious purpose of this statute is to permit landlords and tenants, when each believes it is in his or her interest to do so, to maintain their ongoing relationship despite the fact that the tenant has fallen behind in rent payments. The tenant benefits by avoiding eviction and by being given more time to “catch up” on the arrearage. The landlord benefits because, after establishing the right to possession and obtaining a judgment, the landlord avoids the need to find a new tenant while retaining the ability to quickly execute on the judgment merely by requesting issuance of the writ of possession if the tenant fails to comply with the terms of the agreement. The landlord also benefits by being paid the arrearages without the need for further court proceedings and the uncertainty of trying to collect on any money judgment the landlord may obtain.
By holding that the statute precludes the parties from agreeing that the landlord may obtain possession without instituting a new proceeding if the tenant defaults in the payment of ongoing rent during the period in which the tenant has agreed to retire the arrearage, the majority eliminates one of the major incentives for a landlord to enter into such an agreement. This means that landlords will be less likely to do so, which in turn means that tenants will be deprived of the opportunity for a second chance to remain in their homes. Under the majority’s construction of the statute, the landlord is deprived of the ability to obtain possession without the delay and expense of filing a new action if the tenant, instead of “catching up” on his or her obligations, merely reallocates payments from ongoing rent to payments on the arrearage. Because it is fair to assume that most such agreements will call for arrearage payments that are smaller than the amount of the ongoing rent, it is hard to imagine why any landlord who has already obtained a judgment that permits eviction would find such an arrangement at all attractive. Much more likely is that a landlord who has already obtained a a judgment and who understands that, pursuant to the majority’s construction, a new eviction proceeding will be required if the *127 tenant is unable to pay both the scheduled arrearage amount and ongoing rent, will conclude that entering into such agreements is simply not worth it.[3] Unfortunately, tenants — whom the majority believes it is protecting — likely will bear the brunt of the adverse effects of today’s decision. See AIMCO Props. v. Dziewisz, 152 N.H. 587, 591 (2005) (describing potential adverse consequences for tenants that may result from eviction).
Because the majority’s construction of RSA 540:13-c, II is unsupported by the plain language of the statute, is inconsistent with the statutory scheme, and leads to results clearly contrary to what the legislature intended, I respectfully dissent.
Bassett, J., joins in the dissent.

 The agreement at issue here is entirely consistent with what, in my view, is this proper construction of the statute. The agreement specifically provides that, upon reaching a zero balance on the arrearage, the landlord will “drop” the possessory action. Because the action would be terminated at that point, any failure to make rent payments due thereafter would not be subject to the agreement and would therefore require the landlord to initiate a new possessory action in order to evict the tenant.

 It must be noted that, although RSA 540:13, VII (2007) permits a landlord to accept rental arrearage payments while a possessory action is pending without being deemed to have created a new tenancy, provided the landlord informs the tenant in writing of the landlord’s intention to proceed with the eviction, this section would not preclude the tenant from asserting, under the majority’s construction of RSA 540:13-e, II, the waiver position asserted in the text because, by its terms, RSA 540:13, VII does not apply to the acceptance oí future .rent payments. See Miller, 150 N.H. at 660.

 To the extent that the majority’s opinion suggests that the landlord in this ease has previously entered into agreements for the payment of an arrearage with no mention of the payment of ongoing rent and no explicit language allowing the landlord to obtain a writ of possession on request if the tenant did not pay both the arrearage and ongoing rent, I note that the language of such agreements is ambiguous on this point and the landlord’s brief suggests that he regarded the obligation to pay ongoing rent as an implicit term of these agreements. Now that the majority has made clear, that the requirement to pay ongoing rent during the arrearage period is prohibited, it seems doubtful that the landlord will enter into such agreements in the future.